■ ABDUL S. OZA, as Administrator of the Estate of MUHAMMED OZA, Deceased, Respondent, v ANTHONY SINATRA et al., Respondents, BRUCE CROLY et al., Appellants, et al., Defendants.—In an action to recover damages for wrongful death, the defendants Bruce Croly and James DeLuna separately appeal, as limited by their briefs, from so much of an order of the Supreme Court, Queens County (Graci, J.), dated August 25, 1989, as, *inter alia,* denied their respective motions for summary judgment dismissing the complaint insofar as it is asserted against each of them, and the defendant Arvin Industries, Inc., appeals from so much of the same order as denied those branches of its motion which were for summary judgment dismissing the plaintiff's fourth and fifth causes of action insofar as asserted against it.

Ordered that the order is modified, on the law, by deleting the provisions thereof which denied those branches of the

motion of the defendant Arvin Industries, Inc., which were to dismiss the plaintiff's fourth and fifth causes of action, and by substituting therefor a provision granting the motion of Arvin Industries, Inc., in its entirety, and dismissing the complaint insofar as it is asserted against the defendant Arvin Industries, Inc., and the action against the remaining defendants is severed; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

In December 1984 the decedent Muhammed Oza and his brother purchased the existing lease of a gas station located at Seldon, New York, together with certain fixtures and equipment in the leased premises, including two electric space heaters which had been manufactured by the defendant Arvin Industries, Inc. (hereinafter Arvin). Thereafter, the two brothers operated the station 24 hours a day, seven days a week, each working 12-hour shifts. As the two space heaters which, the plaintiff concedes, were intended to be used as "a household device * * * as a room heater", were the sole source of heat for the office on the premises, they were also operated continuously, 24 hours a day.

On February 5, 1985, a cold and snowy night, around midnight, the defendants Sinatra, Croly and DeLuna drove into the gas station and asked for $1.50 worth of gasoline. The deceased, who was on duty, refused to pump that minimal amount. Croly then placed the money on top of a gas pump and undertook to pump the gasoline himself, and a fight ensued. In the course of the melee, both the decedent and the defendant Sinatra, along with their clothing, were saturated with gasoline. After the fighting subsided, DeLuna and Croly helped Sinatra into their car and drove him to DeLuna's home, where he removed his combustible clothing.

The decedent, meanwhile, ran into the gas station office and telephoned 911 in a confused and desperate state. The 911 transcript discloses that he reported he had been "beat up", could not hear or see, and that he needed help. Some minutes later, the first police officers arrived upon the scene and found the gas station office filled with smoke. The decedent was lying on the floor, engulfed in flames. Wrapped around his right leg was an electrical wire with uncovered splices, used to power a television set that had been in operation. The two electrical space heaters were operating nearby on a desk.

The decedent was subsequently pronounced dead. The autopsy report confirmed the causes of death to be thermal injuries and smoke inhalation. Both the autopsy report and

the police report suggested that the decedent's gasoline-soaked clothes ignited when they came close to one of the space heaters.

This wrongful death action was commenced against Arvin, and against Sinatra, Croly and DeLuna, among others. With regard to Croly and DeLuna (Sinatra did not appeal), we agree with the Supreme Court that the evidence submitted by the plaintiff was sufficient to raise triable issues of fact as to whether they bear some responsibility for the decedent's death.

We reach a different conclusion, however, with respect to the defendant Arvin. The Supreme Court dismissed the causes of action against Arvin alleging breach of warranty. The remaining causes of action are based solely on an alleged breach of Arvin's duty to warn.

It is undisputed that there was emblazoned on the space heaters a warning in white letters on a black background: "CAUTION: SOURCE OF POSSIBLE IGNITION. HIGH TEMPERATURE. KEEP COMBUSTIBLE MATERIAL AWAY FROM FRONT OF HEATER." Clearly, this warning was adequate to alert a consumer to any risks or hazards inherent in the product that are related to its intended and reasonably foreseeable use as a room space heater (see, Prosser and Keeton, Torts § 96, at 685 [5th ed]).

Moreover, it is well settled that " 'there is no necessity to warn a customer already aware—through common language or learning—of a specific hazard' " (Landrine v Mego Corp., 95 AD2d 759; Lancaster Silo & Block Co. v Northern Propane Gas Co., 75 AD2d 55, 65). In other words, users need not be warned of obvious dangers, i.e., those dangers which they would have or should have " 'appreciated to the same extent as a warning would have provided' " (Caris v Mele, 134 AD2d 475, 476; see, e.g., Smith v Stark, 67 NY2d 693).

We find that because the danger of using space heaters in close proximity to gasoline was obvious, particularly in light of the decedent's working experience in gasoline stations and his attendant familiarity with the dangers associated with gasoline fumes, it cannot be seriously contended that Arvin owed a duty to warn him to remain away from the space heaters while wearing clothing saturated with gasoline.

It is well settled that on a motion for summary judgment, the court's function is issue finding rather than issue determination. Nevertheless, if the issue claimed to exist is not genuine, but feigned, and there is really nothing to be resolved at the trial, "the case should be summarily decided,

and an unfounded reluctance to employ the remedy will only serve to swell the Trial Calendar and thus deny to other litigants the right to have their claims promptly adjudicated" *(Andre v Pomeroy,* 35 NY2d 361, 364). Our review of the record discloses the absence of any genuine factual issue with regard to the claim against Arvin. Accordingly, Arvin's motion for summary judgment dismissing the complaint as against it should have been granted in its entirety. Thompson, J. P., Kunzeman and Lawrence, JJ., concur.

Miller, J., concurs in part and dissents in part and votes to affirm the order appealed from, with the following memorandum: I cannot concur in the majority's conclusion that the danger of combustion in this case was so obvious as to negate Arvin's duty to warn.

The plaintiff's cause of action against Arvin sounds in strict product liability. Generally, "A manufacturer or other seller is subject to liability for failure either to warn or adequately to warn about a risk or hazard inherent in the way a product is designed that is related to the intended uses as well as the reasonably foreseeable uses that may be made of the product it sells" (Prosser and Keeton, Torts § 96, at 685 [5th ed]). However, there is no duty to warn of obvious dangers. The term "obvious danger" has been defined to mean "a condition that would ordinarily be seen and the danger of which would ordinarily be appreciated by those who would be expected to use the product" (Prosser and Keeton, Torts § 96, at 686-687; *see, Caris v Mele,* 134 AD2d 475, 476).

In the case at bar, I find that the exposure of gasoline-soaked clothing to space heaters does not constitute an "obvious danger". Those who generally use space heaters do not necessarily appreciate the potential danger of combustion resulting from the exposure of the heater to gas fumes in a confined area. In this case, two space heaters were the sole source of heat in a relatively small enclosed office. The telephone which the decedent was required to use to call 911 was located only two and one-half feet from the nearest heater.

Although it is not clear whether the obvious danger test should be applied on an objective or subjective basis, even given the reasonable presumption of greater knowledge on the part of a gas station owner and gas station attendant, I find that the mere use of the heater in the gas station offices does not constitute so obvious a danger as to eliminate the manufacturer or seller's duty to warn about the hazards of the space heater and its use.

The decedent, who was required to enter and occupy the premises where the heater was located, may in fact have reasonably assumed that his proximity to the heaters, even when wearing clothing which absorbed gasoline, would be safe. While the spillage of some gasoline on a gasoline attendant is clearly foreseeable, his recognition of the combustibility of fumes from his clothing in proximity to the heaters may not conclusively be presumed. Therefore, I find that no "obvious danger" existed, and that Arvin had a duty to warn adequately of the hazards of the space heater's use.

Furthermore, whether the warning Arvin placed upon the heater was adequate is yet another issue of fact to be determined by the jury. The record contains expert testimony demonstrating that the warning did not comply with industry standards.

Assuming that Arvin's warning was inadequate, the plaintiff must still prove that Arvin's failure to warn was the proximate cause of the decedent's injuries and death. I find this also to be a question of fact for the jury, as, arguably, the Arvin space heater might not have been purchased for use in the gasoline station by the defendant owners, had the warning been adequate. Moreover, if the warning had been adequate, the decedent might have become aware of its hazards and avoided entering the premises in his gas-soaked clothing, notwithstanding his injuries.

A further issue for jury determination is whether Arvin should be relieved of liability as a result of an intervening cause, i.e., the beating and dousing of the decedent by the other defendants.

In view of the issues of facts enumerated, summary judgment was properly denied to Arvin on the causes of action based upon its duty to warn. Accordingly, I vote to affirm the order appealed from.